UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA

vs.                                          CRIMINAL NO. 3:26-CR-32 (MPS)

OTILIO GREEN                                 August 10, 2026

### REPLY SENTENCING MEMORANDUM

A five-year sentence of imprisonment, which is a substantial term of imprisonment for a first-time offender and a member of law enforcement, is the sentence that is sufficient but not greater than necessary in this case.[1] Otilio Green respectfully submits this reply to briefly address four points in the government's sentencing memorandum (Doc. No. 136).[2]

First, this Court should give significant weight to Dr. Stenersen's report and opinion when sentencing Otilio. Dr. Stenersen's thorough report fully addresses the government's concerns and arguments for an increased sentence. Among many other things, her opinion included reviewing the complaint and affidavit detailing the full extent of Otilio's offense conduct in addition to interviewing Otilio, many of his family members, and his treating therapist. Dr. Stenersen also has experience treating federal prisoners convicted of sexual offenses and those with pedophilia disorders. Doc. 120, Ex. A at ¶ 4. Her conclusion that Otilio does not have a ██████████ is based on her experience, interviews, and the extensive materials she reviewed. Regardless, she recognizes that Otilio needs

---

[1] Otilio also requests that the Court impose a sentence concurrent to any future anticipated state sentence, impose $136,000 in restitution as agreed upon by the parties, no fine or additional assessments, and a five-year period of supervised release. There were additional restitution requests made after the filing of the defense memorandum that increased Otilio's possible maximum restitution payments. The $136,000 number reflects the agreed upon restitution with all outstanding requests to date and likely through sentencing on Friday, August 14.

[2] This reply expressly incorporates the initial sentencing memorandum and does not waive any point or bases for a variance raised therein but not addressed in this brief reply.

treatment ███████████████████████ both during incarceration and after incarceration, including sex-offender specific treatment and group therapy, which Otilio has already begun. Doc. No. 120, Ex. A at ¶ 222; *see also* Ex. I (Letter from Dr. Lothstein and CV). That treatment provider, Dr. Leslie Lothstein, a renowned specialist in this field who treats ████████████████████ ███████" recognizes Otilio's open and honest nature, finds him "very treatable," and opines that in his "professional opinion" Otilio's risk for reoffense is low. Ex. I (Letter from Dr. Lothstein and CV). He, like Dr. Stenersen, further recommends that Otilio obtain individual or group therapy in the federal system and continue in his sex-offender specific treatment upon re-entry. *Id.* Thus, Otilio does not dispute that he needs sex-offender specific treatment, but he will not obtain this type of treatment incarcerated. He has already begun it and will continue it on his significant period of supervised release. This need for treatment is a reason for a *shorter* prison term, not a *longer* one as the government contends.

Second, Otilio's traumatic childhood had a lasting impact on his development and his conduct in this case, and the parties agree this warrants a variance from the Guidelines range. The government asserts, however, that "questions remain" about how Otilio's traumatic childhood connected to this offense conduct, Doc. No. 136 at 9. Dr. Stenersen's report details that connection, particularly in Section IV, E. Doc. No. 120, Ex. A at ¶¶ 197-208, and Otilio himself explains it in his letter, Ex. G. The government oversimplifies this part of Dr. Stenersen's report and the conclusion it supports, which is that Otilio's traumatic childhood laid the foundation for his issues with sexuality and pornography addiction that then in turn led to this offense. Dr. Stenersen also explains ████████ ████████████████████████████████ which is supported by the sheer volume of it on his phone, and supports the diagnoses by Dr. Stenersen and Otilio's treating therapist, Ex. F. The government hasn't, and certainly couldn't, contend that Otilio has actually watched or

viewed all this material. What the evidence supports is just what Otilio described, he would get a notification and then download a significant amount of material to his phone at one time. He would then put it into a hidden folder. His wife had open access to his phone—any favoriting of was just as likely to separate it out and place it into that hidden folder to avoid her finding anything as anything torrid the government suggests.

Third, Otilio is deterred completely from this conduct, and any future criminal conduct, and the public is adequately protected and the abuse of the public's trust addressed with a sentence of five years' imprisonment. This is a significant sentence of imprisonment that sends the appropriate message to Otilio, the public, and to members of law enforcement. It will be particularly harsh and punitive for Otilio, who has never served a sentence of imprisonment and who has spent over a year and four months on restrictive conditions of pre-trial release. In addition to the actual term of imprisonment, the government ignores all the collateral damage and fallout to Otilio. Simply put, he has lost everything—his ability to be a present and active father to his daughter and adult stepchildren, his career, his ability to provide financial stability to his family, his reputation, his ability to travel freely in the community, his relationships with his family, friends and colleagues, and his ability to interact with the public. He will be further severely restricted while on a five-year term of supervised release and from having to register on the sex offense registry. He has shown, however, that he has resilience and perseverance. He can succeed again with the appropriate treatment in the community as he has on pre-trial supervision, and the Court should also take that into account in sentencing him.

Finally, imposing any further special assessment or fine is unwarranted. Otilio has agreed to liquidate a retirement account to promptly pay all the restitution owed in this case—$136,000. Counsel has conferred with the DOJ's Financial Litigation Unit and confirmed that the best way to do this is to have the government seize that account after the judgment enters (otherwise it would be

3

subject to significant early withdrawal penalties). Otilio's family, however, will still be responsible for paying taxes on this withdrawal. Thus, any remaining monies, which his wife may have an interest in and would need to be used to support the family while Otilio is incarcerated, will be significantly diminished. Just because he can pay, and wants to pay, this restitution, does not mean that he has the ability to pay the $5,000 JVTA assessment (which he must pay unless found to be indigent) or the $35,000 AAVA assessment (which requires consideration of the factors in 18 U.S.C. §§ 3553(a) and 3572) that the government seeks. The government ignores the impact of this case on Otilio's family, including his six-year-old daughter and adult stepchildren, including a son with significant disabilities. In short, it has financially decimated them. His family cannot support themselves currently without substantial contributions from their extended family members. Any scenario here negatively impacts his children and his wife, all of whom will also separately be dealing with the trauma of being separated from their father and husband for a significant period.[3]

As a separate matter, as it relates to Otilio's objection to the proposed conditions of supervised release, he continues to seek a modification of special condition number 5 that would allow him to have contact with his six-year-old daughter. The government has pointed out no specific evidence that Otilio poses any risk to his child, and in fact, DCF has already concluded otherwise as that agency has placed no restrictions at all on Otilio's contact. Such evidence, and specific findings, are required from this Court as this condition infringes on a constitutionally protected right of Otilio's to have contact with his own child. *See, e.g.*, *United States v. Myers*, 426 F.3d 117, 127-28 (2d Cir. 2005).

---

[3] If the Court does impose further financial obligations, they should not be due immediately and should be payable on a schedule after any period of incarceration. The Court may also, of course, consider and balance the term of imprisonment with any financial penalties.

4

For the reasons explained herein and in Otilio's sentencing memorandum, Otilio respectfully asks that the Court impose a sentence of five years' imprisonment to be served concurrently to the anticipated state sentence, followed by five years of supervised release, a $100 special assessment, $136,000 in restitution, no other assessments and no fine because it is the sentence that is sufficient, but not greater than necessary to serve the purposes of sentencing.

Respectfully submitted,

THE DEFENDANT,
Otilio Green

OFFICE OF THE FEDERAL DEFENDER

Dated: August 10, 2026

/s/ Allison N. Kahl
Allison N. Kahl
Assistant Federal Defender
10 Columbus Blvd., 6th Fl.
Hartford, CT 06106
Phone: (203) 498-4200
Bar No.: phv206792
Email: allison_kahl@fd.org

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on August 10, 2026, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Allison N. Kahl
Allison N. Kahl

5